**The PEOPLE of the State of Colorado ex rel. Stuart A. VanMEVEREN, District Attorney, and Terence A. Gilmore, Deputy District Attorney, eighth Judicial District, State of Colorado, Petitioners,**

v.

**The COUNTY COURT IN AND FOR the COUNTY OF LARIMER, State of Colorado, and the Honorable Conrad L. Ball, District Court Judge, sitting as a County Court Judge thereof, Respondents.**

No. 27095.

Supreme Court of Colorado, En Banc.

June 28, 1976.

Stuart A. VanMeveren, Dist. Atty., Terence A. Gilmore, Deputy Dist. Atty., Fort Collins, for petitioners.

Hill & Hill, Alden T. Hill, Joseph R. Coyte, Fort Collins, for respondents.

KELLEY, Justice.

The district attorney instituted this original proceeding pursuant to C.A.R. 21 to challenge the dismissal by the respondent court of a complaint charging harassment against the defendant. Section 18–9–111(1)(h), C.R.S.1973. The respondent court ruled that the statute was unconstitutionally overbroad and vague on its face, in violation of the freedom of speech provisions in the federal [1] and Colorado [2] constitutions, and the charge was dismissed. We issued a rule to show cause why the dismissal should not be set aside and the criminal charge against the defendant reinstated. The matter is now at issue. We hold that the challenged statute is constitutional, and, therefore, the rule is made absolute.

---

1. U.S.Const. amend I.

2. Colo.Const. Art. II, Sec. 10.

*Overbreadth*

The respondent court ruled that subsection (1)(h) of the harassment statute was unconstitutionally overbroad on its face. That subsection provides:

"(1) A person commits harassment if, with intent to harass, annoy, or alarm another person, he:

. . . . . .

"(h) Repeatedly insults, taunts, or challenges another in a manner likely to provoke a violent or disorderly response." Section 18–9–111(1)(h), C.R.S.1973.

■ In passing on the constitutionality of statutes, we are guided by the principle that whenever possible a statute should be construed so as to obviate or reduce any constitutional infirmities. *Bolles v. People*, Colo., 541 P.2d 80 (1975). We must also recognize the right of free speech is not absolute at all times and under all circumstances. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L. Ed. 1031 (1942), and cases cited therein.

■ However, speech is constitutionally protected from governmental "abridgement" or "impairment" unless it falls within one of the limited number of special exceptions. *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Chaplinsky v. New Hampshire, supra; Hansen v. People*, Colo., 548 P.2d 1278 (1976); *Bolles v. People*, Colo., 541 P.2d 80 (1975). These special exceptions have been carved out by the courts in recognition of the fact that the government has a compelling or overriding interest in prohibiting certain types of speech. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Chaplinsky v. New Hampshire, supra; Hansen v. People, supra; Bolles v. People, supra; People v. Vaughan*, 183 Colo. 40, 514 P.2d 1318

(1973). For example, the courts have upheld the constitutionality of statutes prohibiting obscenity, libel, incitement, invasion of substantial privacy interests of the home, and "fighting words." *Hansen v. People*, Colo., 548 P.2d 1278 (1976) and cases cited therein.

■ A statute which places a restraint on freedom of speech must be narrowly and precisely drawn so that the proscription applies only to speech which the government may constitutionally prohibit. *Gooding v. Wilson, supra; Hansen v. People, supra.* A statute will be held unconstitutionally overbroad on its face if it sweeps within its proscription constitutionally protected speech which the government may not prohibit. *Bigelow v. Virginia, supra; Broadrick v. Oklahoma*, 413 U. S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Hansen v. People, supra; Bolles v. People, supra.*

■ Recently, this court held that subsection (1)(e) [3] of the harassment statute was unconstitutionally overbroad on its face. *Bolles v. People, supra.* That subsection prohibited communications made "in a manner likely to harrass or cause alarm" with the "intent to harass, annoy, or alarm another person." Section 18–9–111(1)(e), C.R.S.1973. The court noted that the statutory prohibition was not limited to any of the special exceptions noted above in this opinion, but that it extended "beyond the pale of governmental regulation" to include constitutionally protected speech as well. Under the challenged subsection in *Bolles*, the court noted that

"[i]t would . . . be criminal in Colorado to forecast a storm, predict political trends, warn against illnesses, or discuss anything that is of any significance.

---

3. That subsection provided:

"(1) A person commits harassment if, with intent to harass, annoy, or alarm another person, he:

. . . . .

"(e) Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of communication, in a manner likely to harass or cause alarm; . . . ." Section 18–9–111(1)(e), C.R.S. 1973.

". . . The absurdity of this is patently obvious to anyone who envisions our society in anything but a state of languid repose. The First Amendment is made of sterner stuff."

The subsection of the harassment statute challenged in the present case, subsection (1)(h), differs from the subsection at issue in *Bolles,* and has not previously been construed by this court. The district attorney contends that subsection (1)(h) is not facially overbroad because it is limited to "fighting words" by the use of the phrase "in a manner likely to provoke a violent or disorderly response." We agree that it is not overbroad.

The question is whether repeated insults, taunts and challenges of another "in a manner likely to provoke a violent or disorderly response" is the equivalent of the "fighting words" formulation of *Chaplinsky*—"those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."

Although the general assembly failed to follow the easy path by adopting the *Chaplinsky* formulation, it is obvious that it was trying to reach the same destination. The words used by a defendant to insult, taunt or challenge another in order to fall within the proscription of the statute must be inherently likely to provoke a violent or disorderly response. Words which tend to induce a violent or disorderly response from an average person are "fighting words."

The statute, as we read it, proscribes only those words which have a direct tendency to cause acts of violence by the persons to whom, individually, the words are addressed. The test is what men of common intelligence would understand to be words likely to cause an average addressee to fight. The limited scope of the statute brings it within permissible limitations on free expression. *Chaplinsky v. New Hampshire, supra.*

*Vagueness*

The respondents contend that subsection (1)(h) is unconstitutionally vague in two respects, to wit:

"First it prohibits repeated speech. The word "repeatedly" by definition is vague, because it is impossible to determine how many times a person can do an otherwise lawful act before it becomes unlawful. . . .

"The second reason this subsection is vague is the fact that it requires the speaker to know the emotional impact that his words will have on the recipient of his words. This judgment is independent of the intent of the actor in uttering the words. . . ."

■ Due process of law requires that a statute clearly define its prohibitions in order to avoid a situation where "men of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "The root of the vagueness doctrine is a rough idea of fairness." *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). As stated by the Supreme Court in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), vague statutes in the free speech context are offensive to at least three significant values in our society:

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and dis-

criminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." (Footnotes omitted.)

We conclude that subsection (1)(h) of the harassment statute is not unconstitutionally vague on its face. As construed in the previous section of this opinion, subsection (1)(h) prohibits:

  (a) "fighting words," as heretofore defined, addressed to another person

  (b) consisting of insults, taunts or challenges

  (c) repeatedly made

  (d) with intent to harass, annoy or alarm another person.

"Repeatedly" is a word of such common understanding that its meaning is not vague. It simply means in the context of this statute that the defendant use insulting, taunting or challenging language more than one time.

Nor is the respondent's second vagueness argument valid. Subsection (1)(h) does not require that the speaker guess as to the effect of his words upon the addressee. *Compare Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Rather, as discussed in the overbreadth part of this opinion, subsection (1)(h) requires an objective determination: whether the words when directed to an average person would tend to induce an immediate breach of the peace. *Chaplinsky v. New Hampshire, supra.*

The rule is made absolute. The cause is remanded to the trial court with directions to reinstate the complaint.

HODGES, J., does not participate.