The **PEOPLE** of the State of Colorado, Petitioner,

v.

Ronald J. **SMITH**, Respondent.

No. 92SC541.

Supreme Court of Colorado, En Banc.

Nov. 15, 1993.

John W. Suthers, Dist. Atty., Douglas J. Miles, Stephen Anderson, Deputy Dist. Attys., Colorado Springs, for petitioner.

William J. Hornbostel, Colorado Springs, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari, pursuant to C.A.R. 49(a)(1), to consider the validity of subsection 1(g) of Colorado's harassment statute, section 18–9–111, 8B C.R.S. (1986). The El Paso County District Court affirmed the county court's dismissal of the charge of harassment against respondent Ronald J. Smith on the ground that the statutory subsection under which he was charged was unconstitutionally vague and overbroad on its face under the state and federal constitutions. We hold that subsec-

tion (1)(g) is facially overbroad and therefore affirm.[1]

## I.

On July 17, 1991, Smith was charged with harassment pursuant to section 18–9–111(1)(g), 8B C.R.S. (1986).[2] This statute provides in pertinent part:

**18–9–111 Harassment.** (1) A person commits harassment if, with intent to harass, annoy, or alarm another person, he:

. . . .

(g) Makes repeated communications at inconvenient hours or in offensively coarse language; ...

Smith moved to dismiss the charge, arguing that this subsection was unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment, and that it was overbroad in violation of the First Amendment's protection of free speech. On January 22, 1992, the county court granted Smith's motion and dismissed the case, holding the subsection to be unconstitutionally vague and overbroad. The district court affirmed the dismissal on the same grounds.

## II.

Section 18–9–111(1)(g), 8B C.R.S. (1986) is aimed at prohibiting certain types of communications. Therefore, its validity must be evaluated according to the protections given to free speech under the federal and state constitutions.

Both the United States [3] and Colorado [4] constitutions provide, respectively, that no law "abridging" or "impairing" freedom of speech shall be enacted. However, the right of free speech is not absolute at all times and under all circumstances. *People ex rel. VanMeveren v. County Court,* 191 Colo. 201, 203, 551 P.2d 716, 718 (1976). For example, courts have upheld the constitutionality of statutes prohibiting obscenity, libel, incitement, invasion of substantial privacy interests in the home, and "fighting words." *Hansen v. People,* 190 Colo. 457, 460, 548 P.2d 1278, 1281 (1976) and cases cited therein.

Given the preferred status accorded to free speech by the federal and state constitutions, a statute which restricts speech must be narrowly drawn to avoid criminalizing an intolerable range of constitutionally protected conduct. *People v. Batchelor,* 800 P.2d 599, 602 (Colo.1990) (citing *Osborne v. Ohio,* 495 U.S. 103, 112, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98 (1990)). If a statute substantially infringes upon constitutionally protected speech while proscribing speech which is not constitutionally protected, it will be struck down as facially overbroad. *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973); *Batchelor,* 800 P.2d at 601; *Hansen,* 190 Colo. at 460, 548 P.2d at 1280; *Bolles v. People,* 189 Colo. 394, 397, 541 P.2d 80, 82 (1975).

If narrowly drawn, a statute regulating the hours of speech in public places is constitutionally permissible.[5] *Saia v. New York,* 334 U.S. 558, 562, 68 S.Ct. 1148, 1150, 92 L.Ed. 1574 (1948) (stating "[t]he hours and place of public discussion can be controlled"). In addition, under some circumstances a state may legitimately prohibit unwanted or offensive communications from invading the privacy of individual citizens in their homes. *Cohen v. California,* 403 U.S. 15, 21, 91 S.Ct. 1780, 1786,

---

1. Because we conclude that the subsection is facially overbroad, we need not decide whether the statute is unconstitutionally vague as well. *Hansen v. People,* 190 Colo. 457, 459, 548 P.2d 1278, 1280 (1976).

2. The record does not contain the statements made by Smith which were alleged to be harassing. The People were ordered to file a bill of particulars specifying the conduct constituting a violation of the statute, but never did so.

3. U.S. Const. amend. I, applies to the states through U.S. Const. amend. XIV. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

4. Colo. Const. art. II, § 10.

5. Because we decide this case on other grounds, we do not consider whether the phrase "inconvenient hours" would meet such a requirement.

29 L.Ed.2d 284 (1971); *Rowan v. United States Post Office Dept.*, 397 U.S. 728, 736–37, 90 S.Ct. 1484, 1490–91, 25 L.Ed.2d 736 (1970); *Martin v. City of Struthers*, 319 U.S. 141, 148, 63 S.Ct. 862, 866, 87 L.Ed. 1313 (1943); *Bolles*, 189 Colo. at 399, 541 P.2d at 83.

■ It is clear, however, that a state may not prohibit speech in public places merely because it is "offensively coarse," even if the speech is repeated and is made with the intent to harass, annoy or alarm. *See, e.g., Cohen*, 403 U.S. at 26, 91 S.Ct. at 1788 (holding that the appellant could not be convicted of disturbing the peace by offensive conduct for wearing a jacket bearing a four-letter word in the corridor of a courthouse); *Hansen*, 190 Colo. at 461, 548 P.2d at 1281 (declaring a disorderly conduct statute prohibiting "coarse and obviously offensive" utterances in public places to be facially overbroad). As we recognized in *Bolles*, a crucial function of free speech under our system of government is to invite dispute. 189 Colo. at 398, 541 P.2d at 83. "[I]f unsettling, disturbing, arousing, or annoying communications could be proscribed, ... the protection of the First Amendment would be a mere shadow indeed." *Id.*

■ When viewed in light of these principles, we find that section 18–9–111(1)(g), 8B C.R.S. (1986) is anything but narrowly drawn. Like the disorderly conduct statute declared unconstitutional in *Hansen*, the scope of subsection (1)(g) of the harassment statute is not limited to speech, such as obscenity or "fighting words," which the state may constitutionally prohibit. Rather, the challenged subsection prohibits all repeated communications containing "offensively coarse language" if made with the intent to annoy, harass, or alarm. Moreover, the statute does not distinguish between communications made in public places and communications which intrude into areas in which the individual has a significant privacy interest, such as the home. Because the statute substantially sweeps within its coverage protected as well as unprotected speech, it is facially overbroad.

■ The People argue that the statute in this case is distinguishable from the disorderly conduct statute which we found to be facially overbroad in *Hansen*. The statute involved in *Hansen* provided that:

(1) A person commits disorderly conduct if he intentionally, knowingly, or recklessly:

(a) Makes a coarse and obviously offensive utterance, gesture, or display in a public place; ...

1971 Perm.Supp., C.R.S. § 40–9–106(1)(a).[6] The harassment statute at issue in this case, on the other hand, requires both repeated conduct and the actor's specific intent to harass, annoy, or alarm. This argument is not persuasive. It is true that the requirement of a specific intent to do a prohibited act may prevent a statute from being declared invalid on grounds of vagueness. *Screws v. United States*, 325 U.S. 91, 101–02, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945); *People v. McBurney*, 750 P.2d 916, 920 (Colo.1988). However, a specific intent requirement "fails to eliminate overbreadth concerns whenever the 'effect' (e.g., to harass, to annoy, to alarm, etc.) associated with the intent provision is broad enough to encompass a substantial amount of protected activity." M. Sean Royall, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision*, 56 U.Chi.L.Rev. 1403, 1408–09 (1989).

An examination of harassment statutes from other jurisdictions further supports our conclusion that subsection (1)(g) of Colorado's harassment statute is facially overbroad. Many states have harassment statutes containing language similar to that

**6.** This statute was amended in 1981 as a result of our decision in *Hansen*. *See* Ch. 227, sec. 1, § 18–9–106(1)(a), 1981 Colo. Sess. Laws 1010. The statute now provides that a person commits disorderly conduct if he intentionally, knowingly or recklessly "makes a coarse and obviously offensive utterance, gesture, or display in a public place *and the utterance, gesture, or display tends to incite an immediate breach of the peace.*" § 18–9–106(1)(a), 8B C.R.S. (1986) (emphasis added).

contained in Colorado's statute. However, the vast majority of these statutes either do not apply to speech in public places, or do not punish repeated communications merely because they are "offensively coarse." Several statutes, for example, apply only to harassment by telephone or other means which invade the privacy of persons within their own homes. *See, e.g.,* Alaska Stat. § 11.61.120(a)(3) (1989 & 1993 Supp.) (prohibiting "repeated telephone calls at extremely inconvenient hours"); N.H.Rev.Stat.Ann. § 644:4, II (1986) (subjecting an individual to prosecution in the jurisdiction where the telephone call originated or was received for communications made at "extremely inconvenient hours or in offensively coarse language"); N.D.Cent.Code § 12.1–17–07, Subd. 1, par. b (1985) (prohibiting telephone calls made "anonymously or in offensively coarse language"); Utah Code Ann. § 76–9–201(1)(b) (1990 & 1993 Supp.) (forbidding "repeated telephone calls at extremely inconvenient hours or in offensively coarse language"); *State v. Koetting,* 616 S.W.2d 822, 827 (Mo.1981) (limiting Mo.Rev.Stat. § 565.090.-1(2) (1978) to language directed to a specific individual in the privacy of his or her own home).[7]

 In holding subsection (1)(g) of Colorado's harassment statute to be facially overbroad, we are mindful that statutes should be construed, whenever possible, so as to obviate or reduce any constitutional infirmities. *Bolles,* 189 Colo. at 398, 541 P.2d at 83. If a statute is capable of alternative constructions, one of which is constitutional, then the constitutional interpretation must be adopted. *McBurney,* 750 P.2d at 920; *People v. Randall,* 711 P.2d 689, 692 (Colo.1985). We do not believe, however, that there are any limiting constructions which would render the statute constitutional.

 The People argue that the statute should · be construed to proscribe only "fighting words," even if the language of the statute does not contain such a limitation. "Fighting words" are defined as those words which, by their very utterance, tend to excite others to unlawful conduct or provoke retaliatory action amounting to a breach of the peace. *Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942); *Hansen,* 190 Colo. at 461, 548 P.2d at 1281.

Viewing the harassment statute in its entirety, however, forecloses this approach. Subsection (1)(h) of the harassment statute provides that a person commits harassment if, with the intent to harass, annoy, or alarm, he "[r]epeatedly insults, taunts, or challenges another in a manner likely to provoke a violent or disorderly response." § 18–9–111(1)(h), 8B C.R.S. (1986). In *VanMeveren,* 191 Colo. at 204, 551 P.2d at 719, we construed this subsection to proscribe "fighting words." Since the legislature has already proscribed "fighting words" in subsection (h) of the statute, it is obvious that subsection (g) of the same statute is designed to reach other types of communications. *See Thiret v. Kautzky,*

---

7. At one time, Hawaii had a harassment statute which, like Colorado's, prohibited all repeated communications made at "extremely inconvenient hours, or in offensively coarse language." Haw.Rev.Stat. § 711–1106(1)(d) (1985). In 1992, however, this statute was amended to forbid only those communications which would also "cause the recipient to reasonably believe that the actor intends to cause bodily injury to the recipient or another, or damage to the property of the recipient or another." *Id.* (1992 Supp.). According to the legislature, this amendment was necessary to provide protection to victims of harassment "while at the same time preserving the rights of citizens to engage in political expression and ordinary communications." *Id.*

Colorado's harassment statute is also strikingly similar to Model Penal Code section 250.4(3) (1980), which prohibits the making of "repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language." The drafters of the Code acknowledge that this subsection applies to communicative harassment in any context and not merely to repetitive telephone calls. *Id.* comment at 363 n. 10. However, they also recognize that this provision is vulnerable to an overbreadth challenge since "the constitutional limits on regulation of expression may bar any attempt to punish speech in a public place merely because it is offensive to the audience." *Id.* comment at 365 n. 22.

792 P.2d 801, 807 (Colo.1990) ("In construing a statute, we presume that every part of the statute was intended to be effective.").[8]

Accordingly, we hold that subsection (1)(g) of section 18–9–111, 8B C.R.S. (1986) is overbroad on its face and unconstitutional under the First and Fourteenth Amendments to the United States Constitution and article II, section 10 of the Colorado Constitution.

The order of the district court is affirmed.

---

**8.** The drafters of the Model Penal Code recommend that a similar Code section be interpreted to apply only to repeated telephone calls or other types of communicative harassment that intrude into an individual's legitimate expectation of privacy. Model Penal Code § 250.4 comment at 374. We decline to adopt this approach for several reasons. First, subsection (1)(g) cannot be limited to telephone harassment any more than it can be limited to "fighting words" since subsections (1)(e) and (1)(f) of the statute already deal with telephone harassment. Furthermore, under our case law, adding a phrase limiting the statute to areas in which the individual has a "legitimate expectation of privacy" would inject a vagueness into the statute which cannot withstand First Amendment scrutiny. *See Bolles,* 189 Colo. at 398, 541 P.2d at 83. *See also Cohen,* 403 U.S. at 19, 91 S.Ct. at 1785.