Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2016 CO 74**

**No. 14SC94, People v. Adams—Criminal Law—Sentence Enhancements—
Extraordinary Aggravating Circumstances—Consecutive Sentencing.**

In this case, the supreme court considers whether two different sentence
enhancements—the "general" enhancement, which requires an aggravated term-of-
years range, and the "special" enhancement, which requires consecutive sentencing—
can be applied simultaneously to a sentence for second degree assault on a correctional
officer.  The supreme court concludes, based on the plain language of the relevant
statutes, that the two enhancement provisions do not conflict and that effect can be
given to both.  The supreme court contemplates People v. Andrews, 871 P.2d 1199
(Colo. 1994), in which it held that the general enhancement does not apply to crimes of
escape, but the court ultimately distinguishes Andrews as limited to crimes of escape
only.  Accordingly, the supreme court reverses the portion of the court of appeals'
judgement vacating the defendant's aggravated sentence for second degree assault and
remands for further proceedings.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2016 CO 74

### Supreme Court Case No. 14SC94
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 10CA2454

#### Petitioner:

The People of the State of Colorado,

v.

#### Respondent:

Curtis Gordon Adams.

### Judgment Reversed
*en banc*
November 21, 2016

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
William G. Kozeliski, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent:**
Douglas K. Wilson, Public Defender
Cory D. Riddle, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1    A jury found respondent, Curtis Adams, guilty of assaulting a correctional officer. The presumptive sentencing range for that offense is two to six years, but because Adams committed the assault while serving a sentence for a prior felony conviction, the trial court imposed an aggravated sentence—twelve years in the Department of Corrections to be served consecutively to Adams's remaining sentences.

¶2    This case arises at the intersection of two sources of sentence enhancement. One requires an aggravated term-of-years range; the other requires consecutive sentencing. The court of appeals concluded Adams was not subject to the term-of-years enhancement applied by the trial court. The People now urge us to reverse the court of appeals; they contend the trial court was required to apply both enhancements.

¶3    Based on the plain language of the statutes, we conclude both enhancements apply. Because the two provisions do not conflict, we give effect to both. Therefore, we reverse the portion of the judgment of the court of appeals vacating the defendant's sentence.

## I. Facts and Procedural History

¶4    While serving a sentence in Colorado State Penitentiary for a prior felony conviction, Adams kicked and head-butted a correctional officer. As a result of that altercation, the People charged Adams with second degree assault.

¶5    The statute defining that offense provides in relevant part:

(1) A person commits the crime of assault in the second degree if:
. . .
(f) . . . while lawfully confined or in custody as a result of being charged with or convicted of a crime . . . he or she knowingly and violently applies physical force against a person engaged in the performance of his or her

2

> duties while employed by or under contract with a detention facility . . .
> and the person committing the offense knows or reasonably should know
> that the victim is . . . a person engaged in the performance of his or her
> duties while employed by or under contract with a detention facility . . . .

§ 18-3-203(1)(f), C.R.S. (2016). Paragraph (f) further provides that a sentence imposed for this form of second degree assault "shall be served in the department of corrections and shall run consecutively with any sentences being served by the offender." Id. As a class four felony, the presumptive sentencing range for second degree assault is two to six years. See §§ 18-1.3-401(1)(a)(V)(A); 18-3-203(2)(b), C.R.S. (2016).

¶6 The People also filed a notice of extraordinary aggravating circumstances. Specifically, they alleged that when Adams committed the assault he "was under confinement, in prison, or in any correctional institution as a convicted felon." See § 18-1.3-401(8)(a)(IV), C.R.S. (2016). The general sentencing statute provides that the presence of an extraordinary aggravating circumstance "shall require the court, if it sentences the defendant to incarceration, to sentence the defendant to a term of at least the midpoint in the presumptive range but not more than twice the maximum term authorized in the presumptive range for the punishment of a felony." § 18-1.3-401(8)(a), C.R.S. (2016). Thus, for a class four felony, proof of this extraordinary aggravating circumstance shifts the sentencing range upward to between four and twelve years.

¶7 Following the lead of the parties and the court of appeals, we refer to the enhancement found in the second degree assault statute (requiring consecutive sentencing) as the "special" enhancement to distinguish it from the "general"

enhancement for extraordinary aggravating circumstances found in the general sentencing statute (requiring a sentence of midpoint to twice-max presumptive).

¶8 A jury convicted Adams of the second degree assault charge. Applying the general enhancement, the trial court sentenced Adams to twelve years in the Department of Corrections. The court also ordered this sentence to be served consecutive to his remaining sentences.

¶9 Adams appealed, and the court of appeals affirmed his conviction but vacated his sentence. See People v. Adams, No. 10CA2454 (Colo. App. Jan. 9, 2014) (not published pursuant to C.A.R. 35(f)). Adams argued he was not subject to the general enhancement because the jury never found the extraordinary aggravating circumstance proven beyond a reasonable doubt. But the court of appeals did not reach this contention because it concluded Adams was not subject to the general enhancement for a different reason: The court of appeals looked to one of its prior decisions in which another division, faced with the same issue, concluded the general enhancement in section 18-1.3-401(8)(a)(IV) does not apply to second degree assault under section 18-3-203(1)(f). See People v. Willcoxon, 80 P.3d 817, 821–22 (Colo. App. 2002). The Willcoxon court, relying on our decision in People v. Andrews, 871 P.2d 1199 (Colo. 1994), determined the General Assembly did not intend for the general enhancement to apply to this form of second degree assault because the assault statute contains its own sentencing enhancement—the requirement for consecutive sentencing. 80 P.3d at 822. Persuaded by Willcoxon, the court of appeals vacated Adams's sentence and remanded for resentencing.

4

¶10     We granted the People's petition for certiorari.[1]

## II. Analysis

¶11     We begin our analysis with the statutory text.  Because the provisions at issue concern different aspects of Adams's sentence and can be applied together without conflict, we give effect to both.  We then address Adams's argument that Andrews compels a different result and conclude it does not.  We therefore reverse that portion of the judgment of the court of appeals vacating the defendant's sentence.

## A. Standard of Review

¶12     The proper interpretation of a sentencing statute presents a question of law, which we review de novo.  Chavez v. People, 2015 CO 62, ¶ 7, 359 P.3d 1040, 1042.  "Our primary goal in construing a sentencing statute is to give effect to the legislative intent."  Lehnert v. People, 244 P.3d 1180, 1186 (Colo. 2010) (citing Vensor v. People, 151 P.3d 1274, 1275 (Colo. 2007)).  To do this, we first look to the language of the statute. Id.  We read statutes "as a whole in order to accord consistent, harmonious, and sensible effect to all their parts."  A.S. v. People, 2013 CO 63, ¶ 10, 312 P.3d 168, 171; see also People v. Diaz, 2015 CO 28, ¶ 12, 347 P.3d 621, 624.  "If the statute is unambiguous and does not conflict with other statutory provisions, this court looks no further." Frazier v. People, 90 P.3d 807, 810 (Colo. 2004).  Where there exists an irreconcilable conflict between a general statutory provision and a special or local provision, the

---

[1] We granted certiorari to review the following issue: "Whether the mandatory sentencing aggravator in section 18-1.3-401(8)(a)(IV), C.R.S. (2014) applies to the crime of second degree assault as defined in section 18-3-203(a)(f), C.R.S. (2014) [sic]."

special or local provision typically prevails, but we strive to give effect to both provisions. See § 2-4-205, C.R.S. (2016).

## B. Plain Language

¶13     The People argue this case can be resolved based on the plain language of the statutes. They contend the trial court imposed a legal sentence by selecting a term of between four and twelve years as required by section 18-1.3-401(8)(a)(IV) and by ordering consecutive sentencing as required by section 18-3-203(1)(f). They argue these two statutes can be read together and applied without conflict. We agree.

¶14     The statutes before us concern different aspects of sentencing. The special enhancement under section 18-3-203(1)(f) addresses when a sentence will be served. A prison sentence imposed for this form of second degree assault "shall run consecutively with any sentences being served by the offender." § 18-3-203(1)(f). This provision seeks to deter assaults against correctional officers and other personnel; the statute mandates that offenders who commit such assaults face an additional penalty and guarantees a new sentence will not be incorporated into the time an offender must already serve. See Diaz, ¶ 20, 347 P.3d at 625 (discussing legislative purpose).

¶15     The general enhancement under section 18-1.3-401(8)(a)(IV) addresses another aspect of a sentence, namely its duration. When an extraordinary aggravating circumstance is present, the General Assembly has chosen to expose defendants to a more severe sentencing range—the midpoint of the presumptive range up to twice the presumptive maximum. One such circumstance is the commission of a felony by a

defendant who was "under confinement, in prison, or in any correctional institution as a convicted felon." § 18-1.3-401(8)(a)(IV).

¶16 The plain language of these two statutes permits us to give effect to both provisions. A specific or local provision may apply to the exclusion of a general provision, but that rule only applies where "the conflict between the provisions is irreconcilable." § 2-4-205; see also People v. Mojica-Simental, 73 P.3d 15, 18 (Colo. 2003) ("While we favor a more specific provision over a general one when there is conflict between statutory provisions, in the absence of such a conflict, we give effect to both statutes."). Here, there is no such conflict. A defendant can be sentenced to a greater number of years based on the general aggravator, and he can be made to serve that sentence following completion of his other sentences. We therefore apply both provisions.

¶17 That would close this case, but Adams also argues that the special enhancement provision applies to the exclusion of the general enhancement based on our decision in Andrews. We turn to that contention now.

## C. Andrews

¶18 The defendant in Andrews escaped from a community corrections facility. 871 P.2d at 1200. Police apprehended him a few weeks later and took him to a parole office for processing. Id. He escaped again, but this time he only made it to a nearby parking lot. Id. The defendant pled guilty to two felony escape offenses. Id. At the People's urging, the trial court applied the general enhancement for committing a felony offense while under confinement as a convicted felon, then codified at section

18-1-105(9)(a)(V), 8B C.R.S. (1986 and 1992 Supp.), to the second escape conviction. Id. The court of appeals vacated the sentence. Id.

¶19 We granted review to address whether the general enhancement applied to escape crimes. Id. at 1199. Looking to the overall statutory scheme, we observed that if the general enhancement did apply, then every person convicted of class three felony escape would be subject to the enhancement. Id. at 1202 & nn.7–8. This "would effectively render meaningless" the legislature's decision to classify escape as a class three felony—automatic application of the enhancement would shift the penalty range such that the relevant range would never correspond to the class three range. Id. at 1202. We noted this construction was contrary to our practice of reading statutes in their entirety to "giv[e] force and effect" to every provision. Id. (citing People v. Dist. Court, 713 P.2d 918, 921 (Colo. 1986); Ingram v. Cooper, 698 P.2d 1314, 1317 (Colo. 1985)). Finding the legislative intent "not so clear," we ultimately resolved this interpretive difficulty by concluding the general enhancement did not apply. Id. at 1203. On our way to that conclusion, we observed that the legislature had "provided for enhanced punishment of crimes of escape elsewhere." Id. Special enhancements required sentences for escape crimes to run consecutively to other sentences. Id. (discussing §§ 18-8-208.1, -209, 8B C.R.S. (1986)).

¶20 However, we limited our conclusion in Andrews to crimes of escape. We recognized that in cases involving sentencing for non-escape crimes, we had allowed "an element of an underlying offense [to] also provide the basis for an increased sentence, effectively mandating an escalated penalty for that offense." Id. at 1202. In

8

those cases, we had distinguished escape as not subject to enhanced sentencing based on confinement as an aggravating circumstance. See id. at 1203 & n.10; see People v. Chavez, 764 P.2d 356, 358–59 (Colo. 1988) (treating confinement as aggravating circumstance for contraband-related offense, while acknowledging that it cannot apply as aggravating circumstance for escape); People v. Leonard, 755 P.2d 447, 449–51 (Colo. 1988) (same). Because the legislature took no action to the contrary, we inferred that the general enhancement did not apply to escape. Andrews, 871 P.2d at 1203.

¶21 Thus, Andrews was a traditional exercise in statutory interpretation. We attempted to discern the legislature's intent, see id. at 1201 ("Legislative intent is the linchpin of statutory construction."), and we tried to give "consistent, harmonious, and sensible effect to all parts" of the statutes, id. at 1203. Andrews did not establish that a special sentencing provision necessarily controls over a general one, nor did it set down any clear-statement rule for the legislature to overcome before we will apply multiple sentencing provisions to a single count. See People v. Leske, 957 P.2d 1030, 1045 n.20 (Colo. 1998) ("Our holding [in Andrews] was limited . . . to the crime of escape, and was not based upon the fact that proof of the sentence aggravator also tended to prove an element of the underlying offense."). Andrews was based on the idiosyncratic results of applying the general enhancement to the unique crime of escape, and its reach is limited to that crime.

¶22 Accordingly, the Willcoxon court, on which the division below relied, erred in construing Andrews to mean that a special sentencing provision alone precludes application of the general enhancement. See 80 P.3d at 822. The court likewise erred in

9

concluding that the general enhancement in section 18-1.3-401(8)(a)(IV) cannot apply to second degree assault as described in section 18-3-203(1)(f) simply because the latter provides for consecutive sentencing. Id. As a result, we overrule Willcoxon. Because we overrule Willcoxon, we conclude the division below erred in using Willcoxon's rationale.[2]

¶23 We therefore reject Adams's reliance on Andrews and apply the statutes as written. By their plain meaning, both enhancements apply here.

### III. Conclusion

¶24 The portion of the court of appeals' judgment vacating Adams's sentence is reversed, and we remand to the court of appeals for further proceedings consistent with this opinion.

---

[2] Adams also argues that the General Assembly's failure to amend the relevant statutes in the years since Willcoxon demonstrates legislative acquiescence to the interpretation put forward in that case. Regardless of the merits of discerning legislative intent through legislative inaction, the plain language of the statutes establishes that Adams is subject to both enhancements here.